Rel: July 2, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2025-0359

_____

**Mackenzie Mae Pike**

**v.**

**Clayton Yates**

**Appeal from Randolph Circuit Court**
**(DR-24-900034)**

PER CURIAM.

Mackenzie Mae Pike ("the mother") appeals from a judgment of the Randolph Circuit Court ("the circuit court") that, among other things, determined Clayton Yates ("the father") to be the father of the parties' minor child ("the child"), awarded the parties joint legal and joint physical custody of the child, and ordered the father to pay the mother

$193 per month in child support. The mother argues that there was insufficient evidence to support the circuit court's child-custody award, that the circuit court erred by not ordering retroactive child support, and that the circuit court erred by failing to append the required child-support forms to the judgment in compliance with Rule 32(E), Ala. R. Jud. Admin. The mother's arguments pertaining to child custody and retroactive child support are without merit, but we agree with the mother that the circuit court erred by failing to append the required child-support forms to the judgment. Therefore, we affirm the judgment as it pertains to the issues of child custody and retroactive child support, reverse the judgment as it pertains to the child-support award, and remand the cause for the circuit court to enter a child-support award in compliance with the requirements of Rule 32.

<u>Factual and Procedural History</u>

The mother and the father began a brief romantic relationship in July 2023 when they were both 19 years old. The mother became pregnant with the child shortly thereafter. The parties ended their relationship in January 2024, and the mother gave birth to the child on April 29, 2024.

On May 9, 2024, the father filed a "verified petition for custody determination," requesting, among other things, that the circuit court order a paternity test to confirm that he is the biological father of the child, award him "primary legal and physical custody" of the child, and order the mother to pay him child support. That same day, the father filed a "motion for pendente lite relief," requesting, among other things, that the circuit court require the parties to submit to a paternity test as soon as possible, award him "primary physical custody" of the child, and order the mother to pay him child support. The mother filed an answer on May 22, 2024, denying the material allegations of the father's petition and pendente lite motion.

On that same day, May 22, 2024, the mother filed a "motion for paternity test," stating that she consented to the father's request for a paternity test, and a "counter petition for custody and child support." In her "counter petition," the mother requested, among other things, that the circuit court award her "sole legal and physical custody" of the child and order the father to pay her child support. The father denied the material allegations of the mother's "counter petition."

On June 20, 2024, the circuit court ordered the parties to submit to a paternity test. On July 16, 2024, the father renewed his pendente lite motion and attached a copy of the paternity-test results as an exhibit. The paternity-test results indicated that there was a 99.99% probability that the father is the biological father of the child. On that same day, July 16, 2024, the mother filed a response to the father's renewed pendente lite motion, requesting "legal and physical custody" of the child, "[c]hild support," and limited, supervised visitation for the father.

On August 1, 2024, the parties submitted Form CS-41 and Form CS-42 child-support forms as required by the Child Support Guidelines. See Rule 32(E), Ala. R. Jud. Admin. The circuit court entered a pendente lite order that same day. Among other things, the pendente lite order required the parties to share joint legal custody of the child, impliedly awarded sole physical custody[1] of the child to the mother, provided the father with a graduated schedule for unsupervised visitation with the child, and required the father to begin paying the mother $462 per month in child support.

---

[1]See Ala. Code 1975, § 30-3-151(5) (defining "sole physical custody" as: "One parent has sole physical custody and the other parent has rights of visitation ….").

The trial in the underlying matter took place on March 26, 2025. The circuit court subsequently entered a "final order of paternity and custody" on April 14, 2025.

The father timely filed a "motion to alter, amend or reconsider final order" on April 22, 2025, requesting that the circuit court add a provision requiring the Alabama Department of Vital Statistics to change the child's last name from "Pike" to "Yates" and to add the father to the child's birth certificate. The circuit court entered an "amended final order of paternity and custody" on May 2, 2025 ("the judgment"), implicitly granting the father's postjudgment motion. In the judgment, the circuit court made specific findings of fact as to the issues of child custody and child support, and it established a "2-2-3" custody schedule.[2]

The mother subsequently filed a "motion to alter, amend or vacate or, in the alternative, motion for new trial," arguing that the judgment was "not supported by the law or facts." On May 13, 2025, the same day that the mother filed her postjudgment motion, the mother also initiated this appeal by filing a Form ARAP-25 "docketing statement" and a Form

---

[2]Under a "2-2-3" custody schedule, a child spends two days with Parent A, the next two days with Parent B, and then returns to Parent A for the final three days of the week. The schedule alternates the following week, beginning with the child spending two days with Parent B.

ARAP-1A "transcript purchase order of appellant -- civil."[3] Because the circuit court had not yet ruled on the mother's postjudgment motion, the mother's appeal was temporarily held in abeyance. See Rule 4(a)(5), Ala. R. App. P.

The circuit court entered an order on May 19, 2025, setting the mother's postjudgment motion for a hearing on May 28, 2025.[4] The circuit court entered an order denying the mother's postjudgment motion on May 28, 2025; the mother's notice of appeal became effective at that time. See Rule 4(a)(5).

---

[3]The docketing statement constituted a notice of appeal in substance. See Rule 3(c), Ala. R. App. P. ("The notice of appeal shall specify all parties taking the appeal and each adverse party against whom the appeal is taken; shall designate the judgment, order, or part thereof appealed from; and shall name the court to which the appeal is taken."); see also Okafor v. State, 225 So. 3d 72, 79 (Ala. Civ. App. 2016) (holding that the appellant had filed a notice of appeal because "the docketing statement that [the appellant had] filed contain[ed] all the information required by Rule 3(c), [Ala. R. App. P.] …"), rev'd on other grounds, 225 So. 3d 93 (Ala. 2016). Although not required to effectuate a notice of appeal, this court "'strongly encourage[s]'" the use of a Form ARAP-1 -- i.e., "'the standard notice of appeal for appeals to our supreme court and [to] this court'" -- to file an appeal. Cleveland v. Armstrong, [Ms. CL-2025-0331, Apr. 3, 2026] ___ So. 3d ___, ___ (Ala. Civ. App. 2026)(plurality opinion)(quoting Okafor, 225 So. 3d at 80).

[4]A transcript of the May 28, 2025, hearing is not included in the record.

<u>Standard of Review</u>

"'"'"Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow."'"'"

<u>Gurganus v. Clay</u>, 372 So. 3d 1222, 1229-30 (Ala. Civ. App. 2022)(citations omitted).

"'"Furthermore, when evidence is presented ore tenus, the trial court is '"unique[ly] position[ed] to directly observe the witnesses and to assess their demeanor and credibility."' Therefore, a presumption of correctness attaches to a trial court's factual findings premised on ore tenus evidence."'" <u>Id.</u> at 1230 (citations omitted).

<u>Analysis</u>

I.    <u>Whether there was insufficient evidence to support the initial child-custody determination</u>

The mother argues that there was insufficient evidence to support the circuit court's initial child-custody award of joint physical custody and a "2-2-3" custody schedule. We initially note that, although the mother did not raise this issue in her postjudgment motion, it is properly

before this court. See Rule 52(b), Ala. R. Civ. P. ("When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment or a motion for a new trial.").

First, the mother argues that there was insufficient evidence to support the initial child-custody award under "the best-interest standard." However, the mother does not cite any relevant legal authority pertaining to the factors that a trial court should consider when making an initial child-custody determination based on the best interest of a child.[5] Instead, the mother argues, without citing any supporting legal authority, "that a custody judgment that materially disrupts a

---

[5]See Gurganus v. Clay, 372 So. 3d 1222, 1230 (Ala. Civ. App. 2022)("'"'In making an initial award of custody based on the best interests of the children, a trial court may consider factors such as the "'characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.'" ... Other factors the trial court may consider in making a custody determination include "the sex and age of the [children], as well as each parent's ability to provide for the [children's] educational, emotional, material, moral, and social needs." The overall focus of the trial court's decision is the best interests and welfare of the children.'"'" (citations omitted)).

8

young child's primary attachment should be supported by evidence that such disruption serves the child's welfare."

> "'It is the appellant's burden to refer this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. R. App. P., requires that the argument in an appellant's brief include "citations to the cases, statutes, [and] other authorities ... relied on." Consistent with Rule 28, "[w]e have stated that it is not the function of this court to do a party's legal research."'"

Mullins v. Sellers, 80 So. 3d 935, 945 (Ala. Civ. App. 2011)(quoting Board of Water & Sewer Comm'rs of City of Mobile v. Bill Harbert Constr. Co., 27 So. 3d 1223, 1254 (Ala. 2009)). Because the mother has failed to present any authority that supports her argument pertaining to the application of the best-interest standard to an initial child-custody determination, she has waived that argument. See White Sands Grp. L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008)(holding that an appellant's argument is waived if it is not supported by a discussion of facts or relevant legal authority to support its position).

Second, the mother argues that there was insufficient evidence to support the child-custody award using the statutory factors that a trial

9

court may consider when determining whether joint custody is in the best interest of the child.[6]

The circuit court made the following findings of fact supporting its child-custody determination of joint physical custody and a "2-2-3" custody schedule:

"**5. Factual Findings Related to Custody and Child Support:**

[6]Section 30-3-152(a), Ala. Code 1975, provides:

"In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:

"(1) The agreement or lack of agreement of the parents on joint custody.

"(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.

"(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.

"(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.

"(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody."

10

"a.   'It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated[.]' § 30-3-150, Ala. Code 1975.

"....

"c.   The evidence established the Father's housing and employment instability and established the Mother's employment instability and residence with her family. However, while normally a point of concern, in this case, the Mother and Father are on either end of young adulthood and are still establishing their career paths and testing their options. This phase of life often includes an amount of housing and employment instability that would be concerning at other ages or if their careers were established. ...

"d.   Both the Mother and the Father have extensive support systems in their hometowns and with their families ....

"e.   The Father has consistently sought and exercised visitation with the child since the child's birth.

"f.   The Mother and Father reside roughly a 30-45 minute drive from each other.

"g.   There were no allegations of domestic/familial violence or allegations of any history or harm by any party, nor were any proven at trial.

"h. This Court has considered each of the factors set forth in §§ 30-3-152 and 30-3-132, Ala. Code 1975, and applicable case law, and has accurately calculated the presumptive child support under Rule 32, Ala. R. Jud. Admin.

"i. While both the Mother and the Father made blunders during the pregnancy and after the child's birth as they navigated their new relationship status, they have also largely shown admirable maturity, or at least the ability to model and follow advice from their family/elders, as they have settled into parentage. They also show hallmarks of youth and/or immaturity, but based on the evidence presented, they have confined those instances to before the child's birth or at least to times when they do not have care of the child. On balance, however, this Court is presented two willing, capable parents who desire an active role in the child's life, who now have stable housing, and who have or are pursuing stable, viable employment, and whose resources and abilities should continue to grow as they settle into adulthood."

(Bold typeface in original; footnotes omitted.)

The parents were on equal footing when the circuit court made the initial child-custody determination. See Gurganus, 372 So. 3d at 1230 ("'"'When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the "best interest of the child" standard will generally apply.'"'" (citations omitted)). The circuit court received evidence in the form of the parties'

12

testimony at the March 26, 2025, hearing. It received testimony concerning the parties' support systems and employment histories, the father's attempts at visitation, and the distance between the parties' residences. After considering the evidence, the circuit court made findings of fact that tracked the statutory factors that a trial court may consider when determining whether joint custody is in the best interest of the child, and those findings are afforded a presumption of correctness, see Gurganus, 372 So. 3d at 1230. Thus, based on our limited standard of review in child-custody cases, we cannot say that the circuit court's initial child-custody determination based on those findings was plainly and palpably wrong.

Therefore, we affirm the judgment as to the circuit court's initial child-custody determination.

II. Whether the circuit court erred by declining to award retroactive child support

The mother argues that the circuit court erred when it did not award retroactive child support because, she argues, children have a fundamental right to receive support.

"[I]t is within the discretion of the trial court to award retroactive support back to the filing of the complaint." K.H.L. v. K.G.M., 782 So. 2d

13

804, 807 (Ala. Civ. App. 2000). See Ala. Code 1975, § 30-3-110 (creating a cause of action to establish an order of retroactive child support); and Ala. Code 1975, § 30-3-114 ("The order of retroactive support shall be a sum certain judgment and may cover all periods in which the non-supporting parent failed to provide support. For all time periods in which support is requested, the court shall consider the needs of the child or children and the ability of the parents to respond to these needs ....").

The record does not demonstrate that, in the proceedings below, the mother ever presented an argument to the circuit court that it had erred by denying retroactive child support. See Rule 4(a)(3), Ala. R. App. P. ("Any error or ground of reversal or modification of a judgment or order which was asserted in the trial court may be asserted on appeal without regard to whether such error or ground has been raised by motion in the trial court under Rule 52(b) or Rule 59 of the [Alabama Rules of Civil Procedure]."). The mother timely filed a postjudgment motion, but, in that motion, the mother states as the only assignment of error that "the [judgment] is not supported by the law or facts." That general statement did not sufficiently put the circuit court on notice of the error that the

14

mother has argued on appeal concerning retroactive child support.[7] See Docen v. Docen, 294 So. 3d 767, 773 (Ala. Civ. App. 2019)("The father did not sufficiently apprise the trial court of the objections he now argues at length before this court. Therefore, we cannot put the trial court in error for failing to address those objections.").

Because the circuit court made specific findings of fact related to retroactive child support, Rule 52(b), Ala. R. Civ. P., would allow appellate review of an argument concerning the sufficiency of the evidence to support those findings, but, crucially, the mother has not asserted a sufficiency-of-the-evidence argument on appeal. Instead, the mother argues on appeal that the circuit court's failure to award retroactive child support "constitutes error." Arguments concerning legal error must first be presented to the trial court, and the mother was therefore required to present her argument that the failure to award retroactive child support constitutes legal error to the circuit court, which

---

[7]We recognize that the mother could have made this argument to the circuit court during the May 28, 2025, hearing on her postjudgment motion. However, a transcript of that hearing was not included in the record, and "the effect of failing to provide this court with a transcript of the hearing on the postjudgment motion is the same as if the [mother] had not raised this issue before the trial court." Jones v. Jones, 236 So. 3d 119, 124 (Ala. Civ. App. 2017).

she did not. Thus, the mother's appellate argument concerning retroactive child support is not preserved for appellate review. See Cauthen v. Cauthen, 415 So. 3d 63, 81 (Ala. Civ. App. 2024)(declining to address an argument concerning retroactive child support that had not been raised during the trial or in a postjudgment motion).

Even if the mother had preserved her argument regarding retroactive child support, which she did not, the mother waived it. The authority cited by the mother correctly demonstrates that the circuit court had discretion when deciding whether to award retroactive child support. What is missing from the mother's argument, however, is any authority to support her conclusion that the circuit court exceeded its discretion when it denied retroactive child support. Because the mother failed to support her retroactive-child-support argument with relevant legal authority, she waived it. See White Sands, 998 So. 2d at 1058.

Therefore, we affirm the judgment as to the issue of retroactive child support.

III. Whether the circuit court erred by failing to comply with the requirements of Rule 32(E), Ala. R. Jud. Admin.

The mother argues that the circuit court "erred in calculating the Father's child-support obligation at $193 per month despite the absence

16

of current CS-41 and CS-42, or CS-42-S, forms in the record and where the only CS-42 forms filed reflected a substantially higher recommended support amount." The mother's brief at 18.

Rule 32(E), Ala. R. Jud. Admin., requires the filing of a standardized Child-Support Guidelines form (Form CS-42 or Form CS-42-S), a Child-Support-Obligation Income Statement/Affidavit form (Form CS-41), and a Child-Support Guidelines Notice of Compliance form (Form CS-43) in each action to establish or modify a child-support obligation. Notwithstanding the mandatory language of Rule 32(E), "this court has excused the filing of CS-41 and CS-42 forms in cases in which the evidence in the record clearly established that the child-support award complied with the child-support guidelines." Ruberti v. Ruberti, 117 So. 3d 383, 386 (Ala. Civ. App. 2013).

We note that the record does not indicate that the mother argued in the circuit court that it had erred by failing to append the proper child-support forms to the judgment in compliance with Rule 32(E). This court has refused to address some Rule 32 issues based on the failure of a party to have raised those issues before a trial court. See, e.g., Cauthen, 415 So. 3d at 80 (declining to consider a mother's argument that the trial

17

court had failed to comply with the requirements of Rule 32 by incorrectly calculating her monthly income when determining her child-support obligation because she had not raised that issue in the trial court); and Routzong v. Baker, 20 So. 3d 802, 810-11 (Ala. Civ. App. 2009)("The father contends that the trial court failed to follow Rule 32(B)(7)(c), Ala. R. Jud. Admin., when it did not recalculate his child-support obligation to reflect that he, rather than the mother, was providing health-insurance coverage for the children. The father did not present this argument to the trial court, and, accordingly, he has failed to preserve it for appellate review."). However, we have consistently held that the failure to include the proper child-support forms in compliance with Rule 32(E) is reversible error, see Morrow v. Dillard, 257 So. 3d 316, 325-26 (Ala. Civ. App. 2017), even when there was no indication that a party had raised that issue before a trial court. See Clark v. Clark, 292 So. 2d 1054, 1060-61 (Ala. Civ. App. 2019)(reversing the trial court's amended judgment as it pertained to the child-support award when the parties agreed on appeal that the trial court had erred by failing to append the required child-support forms to the amended judgment and there was no indication that either party had raised that issue in a postjudgment

18

motion). Thus, we will address the mother's argument that the circuit court erred by failing to append the proper child-support forms to the judgment in compliance with Rule 32(E).

In this case, the circuit court awarded joint physical custody and a "2-2-3" custody schedule and stated that it had used Form CS-42-S to calculate the child-support award. See Rule 32(C)(7)(b), Ala. R. Jud. Admin. ("When the court orders shared 50% physical custody, … child support shall be calculated using Form CS-42-S, instead of Form CS-42."). However, a copy of that Form CS-42-S is not included in the record. The record does include a copy of the Form CS-41 affidavits and the Form CS-42 child-support-guidelines forms that were completed by the mother and the father in August 2024. However, neither those forms nor any other evidence in the record clearly establishes that the child-support award complied with the child-support guidelines. Therefore, the circuit court erred by failing to append the proper child-support forms to the judgment in compliance with the requirements of Rule 32(E).

## Conclusion

For the foregoing reasons, we affirm the circuit court's judgment as it pertains to the issues of child custody and retroactive child support. We

19

reverse the judgment as it pertains to the award of child support and remand the cause for the circuit court to enter a judgment that awards child support in compliance with the requirements of Rule 32(E).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, and Fridy, JJ., concur.

Moore, P.J., concurs in the result, without opinion.

Bowden, J., concurs in part and dissents in part, with opinion.

BOWDEN, Judge, concurring in part and dissenting in part.

I concur fully in Sections I and II of the main opinion and respectfully dissent as to Section III.

It is a fundamental principle of appellate practice that "'[i]ssues not raised before the trial court will not be considered for the first time on appeal.'" Duke v. Walmart, Inc., [Ms. SC-2026-0074, Mar. 20, 2026] ___ So. 3d ___, ___ n.4 (Ala. 2026)(quoting ITEC, Inc. v. Automated Precision, Inc., 623 So. 2d 1139, 1140 (Ala. 1993)); see Rule 4(a)(3), Ala. R. App. P. ("Any error or ground of reversal or modification of a judgment or order which was asserted in the trial court may be asserted on appeal without regard to whether such error or ground has been raised by motion in the trial court under Rule 52(b) or Rule 59 of the [Alabama Rules of Civil Procedure].").  As our supreme court has stated, "'"'there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right ….'"'" Birmingham Hockey Club, Inc. v. National Council on Comp. Ins., Inc., 827 So. 2d 73, 80 (Ala. 2002)(citations and emphasis omitted).

Mackenzie Mae Pike ("the mother") argued for the first time on appeal that the Randolph Circuit Court ("the circuit court") had erred by

failing to comply with the requirements of Rule 32(E), Ala. R. Jud. Admin. Nonetheless, the main opinion considers the mother's argument and reverses the circuit court's judgment in part on that issue.

I recognize that the plain language of Rule 32(E) requires the filing of certain standardized child-support forms in each action to establish or modify a child-support obligation. However, to my knowledge, neither this court nor our supreme court has expressly held that we can consider an argument regarding Rule 32(E) that was made for the first time on appeal. Furthermore, as the main opinion correctly points out, this court has refused to address other Rule 32 arguments because they were raised for the first time on appeal. See, e.g., Cauthen v. Cauthen, 415 So. 3d 63, 80 (Ala. Civ. App. 2024); and Routzong v. Baker, 20 So. 3d 802, 810-11 (Ala. Civ. App. 2009). I do not see a logical reason to allow some issues regarding Rule 32 to be raised for the first time on appeal but not others.

I would conclude that the mother waived her Rule 32(E) argument because she presented it for the first time on appeal. Therefore, I respectfully dissent as to Section III of the main opinion.